IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


YVETTE OGLESBY,                                       CV 05-1610-MA

            Plaintiff,                          ORDER AND OPINION

      v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

            Defendant.

      RORY LINERUD
      PO Box 1105
      Salem, Oregon  97308

            Attorney for Plaintiff

      KARIN J. IMMERGUT
      United States Attorney
      District of Oregon
      NEIL J. EVANS
      Assistant United States Attorney
      1000 S.W. Third Avenue, Suite 600
      Portland, OR  97204-2902

      DAVID J. BURDETT
      Special Assistant United States Attorney
      Social Security Administration
      701 5th Avenue, Suite 2900 M/S 901
      Seattle, WA  98104-7075

            Attorneys for Defendant

MARSH, J.

**BACKGROUND**

Plaintiff, Yvette R. Oglesby (Oglesby), brings this action for judicial review of a final decision of the Commissioner of Social Security denying her applications for disability benefits under Titles II and XVI of the Social Security Act (the Act). The court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

Oglesby applied for benefits in July 2002, alleging disability beginning March 2001 due to a lower back injury, chronic fibromyalgia, temporomandibular joint syndrome, chronic dysthymia, and chronic delayed stress syndrome. She was 52 years old at the time of the Administrative Law Judge's (ALJ) decision finding her not disabled, on February 10, 2005. She has a general equivalency diploma and past work as a group home coordinator, confidential secretary, retail salesperson, receptionist and resident manager. The ALJ's decision became final after the Appeals Council denied review on August 26, 2005.

On appeal to this court Oglesby alleges the ALJ erred: (1) by failing to develop the record regarding her alleged chronic fatigue and Bertolotti's Syndrome; (2) at step two, by not finding Degenerative Disc Disease to be one of her severe impairments, and by failing to consider the combined affect of her non-severe impairments; and, (3) by failing to credit all her

alleged impairments in her residual functional capacity assessment.

The Commissioner maintains her decision is supported by substantial evidence and should be affirmed.  For the reasons that follow, I concur with the Commissioner and AFFIRM her decision.

## STANDARD OF REVIEW

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record.  42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Id.

The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision.  <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986).  If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner."  <u>Edlund v. Massanari</u>, 253 F.3d 1152, 1156 (9th Cir. 2001).

## **DISABILITY ANALYSIS**

The Commissioner has established a five-step sequential process for determining whether a person is disabled.  <u>Bowen v. Yuckert,</u> 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520, 416.920.  The claimant bears the burden of proof at steps one through four.  <u>See</u> <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999); 20 C.F.R. § 404.1512, 416.912.  Each step is potentially dispositive.

Here, at step one the ALJ found Oglesby had not engaged in substantial gainful activity since her alleged disability onset date.  <u>See</u> 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two the ALJ found Oglesby suffered from "severe" fibromyalgia, as defined in the regulations.  <u>See</u> 20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three the ALJ found Oglesby's impairments did not meet or equal the requirements of a listed impairment, codified at 20 C.F.R. Part 404, Subpart P, Appendix 1, considered so

severe as to automatically constitute a disability.  <u>See</u> 20
C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

    The ALJ determined that Oglesby had the residual functional
capacity (RFC) for light work, in a position involving standing
or walking for up to two hours and sitting for at least six hours
of an eight hour work day, with only occasional stooping or
crouching.  <u>See</u> 20 C.F.R. §§ 404.1520(e), 416.920(e), 404.1545,
416.945, 404.1567, 416.967.

    At step four the ALJ found Oglesby remained capable of
performing her past work as a receptionist or a secretary.  <u>See</u>
20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Accordingly,
the ALJ found Oglesby not disabled at step four and did not reach
step five of the sequential evaluation.

<u>**DISCUSSION**</u>

**I.    The ALJ's duty to further develop the record was not
        triggered.**

    Oglesby alleges the ALJ failed to develop the record
"involving [her] various impairments."  She points to two
impairments she believes the ALJ should have "investigated":
fatigue and Bertolotti's Syndrome (referring to structural
anomalies of the fifth lumbar vertebra).

    The burden of demonstrating a disability lies with the
claimant.  <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n. 5 (1987).
However, "the ALJ has a duty to assist in developing the record."
<u>Armstrong v. Commissioner of Soc. Sec. Admin.</u>, 160 F.3d 587, 589

(9th Cir. 1998); 20 C.F.R. §§ 404.1512(d)-(f), 416.912(d)-(f).
To that end, the ALJ "will make an initial request for evidence
from [the claimant's] medical source." If the medical source has
not responded within 20 days of the request the ALJ "will make
one followup request to obtain the medical evidence necessary to
make a determination." 20 C.F.R. §§ 404.1512(d), 416.912(d). If
the evidence provided by the medical source "contains a conflict
or ambiguity" that cannot be resolved by other evidence in the
record, then the ALJ will re-contact the medical source for
clarification. Id. at 404.1512(e), 416.912(e); see also Mayes v.
Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001). If the medical
source does not, or cannot, provide clarification, then the ALJ
has the option of ordering a consultative evaluation to resolve
the conflict or ambiguity. 20 C.F.R. §§ 404.1512(f), 416.912(f).
However, the ALJ has no duty to develop the record if the
claimant simply fails to provide medical evidence to support her
allegations. In that case, the ALJ will make a decision based on
the available information. Id. at 404.1516, 416.916.

**A.  Fatigue**

Oglesby claims the ALJ should have investigated whether she
suffers from chronic fatigue because she testified that she does,
and because "the record involved clear discussion of fatigue and
how it affected [her] ability to work." The only acceptable
medical evidence Oglesby provided in support of her allegedly

severe fatigue was one chart note from December 13, 1999, on which Howard Gradler, M.D., diagnosed her with fibromyalgia and noted her subjective report of chronic poor sleep and fatigue. <u>See</u> 20 C.F.R. §§ 404.1513, 416.913.  She also points to a progress note dated July 12, 2002, on which physician's assistant William Williams stated that he did not believe Oglesby could work due to fibromyalgia, chronic pain and chronic fatigue. However, Mr. Williams is not a physician so his opinion was entitled to the weight of a lay witness, and could be rejected for germane reasons.  <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001).

The ALJ noted Oglesby's testimony as to her "low energy" but found her activities of daily living undermined this claim.  The ALJ also observed the "occasional notation" of fatigue by Mr. Williams, but found "insufficient medical findings to support such a diagnosis."  Oglesby does not specifically challenge the ALJ's rejection of Mr. Williams' opinion.

This evidence did not present the ALJ with the sort of conflict or ambiguity that would necessitate re-contacting medical sources or ordering a consultative examination.  Contrary to Oglesby's suggestion, the ALJ did not have a duty to launch an investigation into whether she suffers from severe fatigue simply because there is mention of fatigue in the record.  *Id*. at 514-15.  Accordingly, I find no error.

**B.    Bertolotti's Syndrome**

According to Oglesby, the ALJ "ignored the relationship that was likely established" between Bertolotti's Syndrome and her allegedly constant back, hip, leg and foot pain.  At the hearing she claimed only that this syndrome accounted for her alleged back pain.  She now claims the ALJ had a duty to investigate the significance of this condition.

The only medical evidence in the record supporting the diagnosis of Bertolotti's Syndrome is a consultative examination performed by Western Medical Consultants, Inc. in November, 1989 pursuant to a worker's compensation claim filed by Oglesby.  The ALJ reviewed this report, in addition to Oglesby's allegations regarding Bertolotti's Syndrome.  He determined that although this diagnosis could account for back pain, it did not reliably account for Oglesby's pain because she continued to work at light to medium exertional jobs for more than 10 years afterward.

There was no conflict or ambiguity in the medical evidence Oglesby provided that necessitated the ALJ re-contacting Western Medical Consultants, or ordering a new consultative examination.  If, as Oglesby contends, Bertolotti's Syndrome progressed over time, she should have provided the ALJ with the medical evidence or the medical source that could support this contention.  The ALJ is not required to simply credit every complaint of disabling pain or else disability benefits would be available for the

asking.  <u>Fair v. Bowen</u>, 885 F.2d 597, 605 (9th Cir. 1989).

Accordingly, I find the ALJ did not err in his consideration of
this alleged condition.

## II.  **The ALJ's step two determination was based on substantial evidence.**

Throughout Oglesby's memorandum she makes reference to the
ALJ's error in failing to find various impairments were "severe"
within the meaning of the act.  For instance, in the section of
her memorandum where she alleges the ALJ failed to properly
develop the record she also claims the ALJ found her Bertolotti's
Syndrome, trochanteric bursitis, fatigue and degenerative disc
disease were non-severe impairments "[w]ithout medical
authority."  Under a separate section she also argues that the
ALJ erred by failing to consider the combined affect of her
severe and non-severe impairments.

In order to prove an alleged impairment is "severe" the
claimant must show (i) that she suffers from a "medically
determinable physical or mental impairment," and (ii) that the
medically determinable impairment significantly limits her
physical or mental ability to do basic work activities.  <u>See</u> 20
C.F.R. §§ 404.1504, 404.1520(c), 416.904, 416.920(c); <u>see also</u>
<u>Edlund</u>, 253 F.3d at 1159-60.

To show a "medically determinable physical or mental
impairment" the claimant must proffer "medical evidence
consisting of signs, symptoms, and laboratory findings," not

simply her own subjective statement of symptoms.  20 C.F.R. §§
404.1508, 416.908.  If the claimant makes such a showing, she
must also prove the impairment significantly limits her ability
to: walk, stand, sit, lift, push, pull, reach, carry, handle,
understand, carry out and remember simple instructions, use
judgment, respond appropriately to supervisors, co-workers, and
usual work situations, and/or deal with changes in a routine work
setting.  20 C.F.R. §§ 404.1521, 416.921.  An impairment is not
severe if it has no more than a minimal effect on the claimant's
ability to do these types of activities.  See SSR 96-3p.

    In Oglesby's case, the ALJ thoroughly reviewed the medical
evidence and found her only "severe" impairment was fibromyalgia.
He considered her allegations of severe Bertolotti's Syndrome,
fatigue and degenerative disc disease, in addition to her other
allegedly severe impairments of temporomandibular joint syndrome
(TMJ), tremors and depression.  However, the ALJ found the
medical evidence did not support finding any of these impairments
significantly limited Oglesby's ability to do basic work
activities.  Though there was some medical evidence supporting
each of these alleged impairments, it was either from
unacceptable medical sources and/or was undermined by Oglesby's
lack of credibility – a finding she does not challenge.  In
addition, the ALJ noted that several examining physicians and

psychologists assessed Oglesby with only slight limitations, or found no evidence at all to support her subjective complaints.

The ALJ, therefore, reasonably concluded that Oglesby did not meet her burden of showing she suffered from any other "severe" impairments except fibromyalgia.  His finding is supported by substantial evidence and is therefore affirmed.

### III. The ALJ's RFC assessment is supported by substantial evidence

Oglesby also argues that the ALJ erred in his consideration of her allegedly severe Bertolotti's syndrome, fatigue, trochanteric bursitis and degenerative disk disease by erroneously failing to credit "the entirety of restrictions established by the medical record and testimony" regarding these impairments.  Not only does Oglesby fail to point to the medical evidence establishing restrictions associated with these alleged impairments, she does not state what restrictions the ALJ failed to credit.

A claimant's RFC is the most an individual can still do despite her limitations.  SSR 96-8p.  RFC is used at step four of the sequential evaluation process to determine whether an individual is able to do past relevant work, and at step five to determine whether an individual is able to do other work, considering her age, education, and work experience.  The ALJ assesses a claimant's RFC by reviewing all relevant evidence in the record, including testimonial and medical source statements,

Page -11- OPINION AND ORDER

to determine the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect her capacity to do work.  <u>Id</u>.

Here, the ALJ found Oglesby had the RFC to perform light work involving standing or walking up to two hours and sitting for at least six hours in an eight hour work day, with only occasional stooping or crouching.  Since this finding is supported by substantial evidence in the record, and since Oglesby does not point to any acceptable medical evidence supporting additional restrictions, the ALJ's RFC finding is affirmed.

<u>**CONCLUSION**</u>

Based on the foregoing, the Commissioner's final decision is AFFIRMED and this case is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this  14  day of September, 2006.

/s/  Malcolm F. Marsh
Malcolm F. Marsh
United States District Judge